IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSANNA GRDINICH, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 10-4954 |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA HOUSING AUTHORITY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**JONES, II, U.S.D.J.**                                                                                  September 25, 2011

## MEMORANDUM

Plaintiff Rosanna Grdinich has brought multiple claims in an Amended Complaint (Docket No. 32) against Defendants Philadelphia Housing Authority ("PHA"), Carl Greene (PHA Executive Director), Richard Zappile (Chief of PHA Police and PHA Public Safety Director); Fred Pasour (PHA Acting General Counsel), and Shelley James (PHA Chief of Staff) (together, "Defendants").[1] Presently before the Court are each Defendant's Motion to Dismiss (Docket Nos. 34; 35; 36; 37; 38); Plaintiff's Omnibus Response (Docket No. 39); Reply Briefs filed by Defendants PHA and Zappile (Docket Nos. 46; 48); and Plaintiff's Omnibus Sur-Reply Brief (Docket No. 50). The Court held oral argument on May 9, 2011 (Tr. at Docket No. 53).

**I.**     **Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

---

[1] Unless noted otherwise, the Court discusses the individual Defendants by their employment titles/status at the time of the filing of the Amended Complaint.

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949. Accord Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation omitted). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"– "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Iqbal, 129 S. Ct. at 1950.

**II.     Factual Allegations**

For the purpose of deciding the instant Motions, the Court must take all alleged facts as true. Phillips, 515 F.3d at 233. To be clear, under U.S. Supreme Court precedent, this is required at this stage of the case to evaluate, under a specific overall standard and the frameworks of particular legal claims, whether Plaintiff has alleged facts sufficient to establish that she may eventually be entitled to redress such that any of her claim(s) should be allowed to proceed to discovery, summary judgment motion practice, and, potentially, a trial on the merits.

Plaintiff makes the following limited factual averments in the Amended Complaint.[2]

In October 1999, PHA hired Plaintiff, a former Philadelphia Police Officer, to fill the position of PHA Equal Employment Opportunity ("EEO") Officer. Am. Compl. ¶ 13. In her role as EEO Officer, Ms. Grdinich's duties included administering and processing employee complaints; investigating employee complaints; interviewing complainants, witnesses and others; drafting investigative reports; and representing PHA at federal, state and administrative levels. Id. at ¶ 14.

In January 2008, a PHA employee named Moneke Thomas brought an internal sexual harassment complaint against Carl Greene. Id. at ¶ 15. Ms. Thomas subsequently filed a complaint with the Equal Employment Opportunity Commision ("EEOC"). Id. at ¶ 18. Plaintiff was not informed of these complaints; instead, they were handled by Fred Pasour, Mr. Greene, and outside counsel. Id. at ¶ 16; 17; 19; 20. The complaints were settled for a monetary sum without publicity. Id. at ¶ 21; 25.[3]

In late 2008, Plaintiff received three anonymous calls from individuals complaining about Mr. Greene's purported harassment of Ms. Thomas. Id. at ¶ 26. Soon thereafter, Mr. Greene "stopped Plaintiff in a hallway at PHA and inquired as to EEOC complaints she was working on." Id. at ¶ 27. Plaintiff responded that she had received three

---

[2] Quotations are taken verbatim from the Amended Complaint.

[3] The Amended Complaint includes negative commentary as to (1) the amount of the settlement and (2) whether Mr. Greene and Mr. Pasour sought purportedly necessary approvals for the settlement. See Amended Complaint ¶ 21-25. Even if these were credible factual averments as opposed to mere unsupported conclusions, they are superfluous and irrelevant.

anonymous calls regarding Mr. Greene's purported harassment of Ms. Thomas.[4]  Id. at ¶ 28.

Subsequently, Mr. Pasour and Shelley James informed Plaintiff that "she was no longer the EEO

Officer," and that Pasour was taking over Plaintiff's EEO duties.  Id. at ¶ 29.  Mr. Pasour took

control of certain EEO files, some of which Plaintiff alleges subsequently went missing.  Id. at ¶

30-31.

Plaintiff was then assigned to be a Special Investigator under supervisor Richard

Zappile.[5]  Id. at ¶ 32.  Plaintiff was required to be present during PHA evictions, but "was not

allowed to carry a gun or bullet proof vest that uniformed PHA police officers wore."[6]  Id.

Plaintiff stated to Mr. Pasour that she did not want to work with Mr. Zappile because she had

heard complaints that Mr. Zappile had made "inappropriate comments" to female employees.  Id.

at ¶ 33.  Mr. Pasour declined to discuss the matter with Plaintiff.  Id.  Plaintiff alleges that Mr.

Zappile refused to speak to her and cautioned other employees to not speak with or trust her.  Id.

at ¶ 34.

In February 2009, Plaintiff took medical leave for "stress related injuries."  Id. at ¶

35.  PHA disapproved her leave and ordered her to return to work or risk termination.  Id. at ¶ 36.

---

[4] Plaintiff characterizes her answer to Greene's questions as "voicing her concern," Am. Compl. ¶ 29, but it is impossible to escape the fact that the Amended Complaint only alleges that, in response to a question about work, Plaintiff informed Greene that she had received three calls and said nothing more.  Id. at ¶ 28 ("Ms. Grdinich informed Defendant Executive Director Carl Greene that she had had received three anonymous calls regarding sexual harassment by Defendant Greene against Moneke Thomas.")

[5] The Amended Complaint characterizes this occurrence as a "demotion," but provides no explanation as to why it was such.

[6] Contrary to Plaintiff's repeated assertions, the Amended Complaint does not aver that Mr. Zappile himself prevented Plaintiff from doing so, or include any allegations as to why these protections were not permitted.

Plaintiff's salary was reduced by 25 percent.  Id. at ¶ 37.  In May 2009, Plaintiff was assigned to be a Section Eight Investigator.  Id. at ¶ 38.  In June 2009, Plaintiff was assigned to the PHA Summer Food Program.  Id. at ¶ 39.  In September 2009, Plaintiff was assigned to be Compliance Officer for Quality Assurance.  Id. at ¶ 40.  In July 2010, Plaintiff was assigned to the Relocation Department.  Id. at ¶ 41.

On September 15, 2010, PHA disseminated a "Media Policy."[7]  Id. at ¶ 42.[8]

---

[7] The Amended Complaint characterizes the Media Policy as "prohibiting Plaintiff and other PHA employees from speaking out about matters of public concern."  Am. Compl. at ¶ 41. This is a naked legal conclusion rather than factual averment, and as such I do not accept it as true for purposes of deciding the pending Motions.  The Media Policy speaks for itself and reads as follows:

> All media inquiries regarding the Philadelphia Housing Authority ("PHA'"), its business, properties, residents, employees should be referred to the General Manager of Communications, Nichole Tillman, 215-684-4139.  When a member of the Press makes an inquiry of an employee regarding PHA, the person making the inquiry should be directed to contact the General Manager of Communications, Nichole Tillman.  Staff personnel shall not engage in any media interviews during work hours or at any PHA property.
>
> No officer or employee of the PHA shall represent or appear to represent the Authority on the radio, television, newspaper, internet, or any other type of publication or broadcast, or before the public in any activity that may reasonably be construed as constituting such representation.
>
> If you have any questions on PHA media policy contact General Manager of Communications, Nichole Tillman 215-684-4139 or cell 215-888-2869 or Nichole.Tillman@pha.phila.gov.

Id. at Ex. 3.

[8] Plaintiff's Amended Complaint references a September 14, 2010 Philadelphia Daily News article "describing the above-referenced events."  This is irrelevant.  In addition, Plaintiff offers the conclusory assertion that "Defendants continue to assign [Plaintiff] meaningless or

**III.   Discussion**

Plaintiff brings three Counts.  First, Plaintiff claims that the individual Defendants violated her rights under the First Amendment to the U.S. Constitution by retaliating against her for "engaging in protected speech."  Am. Compl. ¶¶ 45-51.  Second, Plaintiff brings a claim under 42 U.S.C. § 1983 against the PHA and individual Defendants in their official capacities for engaging in activities that resulted in deprivation of a constitutional right.  Finally, Plaintiff claims that the individual Defendants violated her rights under state law – namely, the Pennsylvania Whistleblower Act, 43 P.S. § 1421, et seq. – by retaliating against her.[9]

Applying the appropriate legal standards I reach the following conclusions.

**A.  Defendant James**

The Amended Complaint is grossly inadequate concerning Defendant James.

---

ministerial tasks that do not reflect the level of knowledge or experience she possesses [sic] in her capacity as EEO Officer."  Am. Compl. ¶ 44.  There are no factual allegations offered to explain or support this characterization.

[9] Plaintiff has argued for the existence of a 42 U.S.C. § 1985 conspiracy claim.  That provision is mentioned once in the Amended Complaint – without explanation – in the Prayer for Relief.  There is no Count or claim that discusses that provision.  Plaintiff does use the isolated word "conspiracy" several times in the Amended Complaint, but this is plainly inadequate as a Section 1985 conspiracy claim must be pleaded with factual specificity.  See Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1972) ("With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3).").  As such, the mere incantation of the words "conspiracy" or "acting in concert" do not alone satisfy the pleading requirements for facts to support a conspiracy claim.  Accordingly, to the extent a conspiracy claim exists, it is insufficient and will be dismissed.

In addition, Plaintiff spent considerable effort briefing some type of constructive discharge claim that is not ascertainable from the face of the Amended Complaint.  Use of the phrase "constructive discharge" in the Amended Complaint is not a talisman that permits a claim to survive the appropriate pleading standard despite obvious deficiencies.  Regardless, any such claim would fail as a matter of law because Plaintiff was still an employee of PHA (i.e., had not resigned) at the time of the filing of the Amended Complaint.  See PHA Reply Br. at 4-5.

Ms. James is only mentioned in two paragraphs of the Amended Complaint. Paragraph 10 identifies Ms. James as PHA Chief of Staff. Paragraph 29 avers that Mr. Pasour and Ms. James informed Plaintiff that she was no longer the EEO Officer. The latter averment is not complemented by any other relevant allegation (i.e., Plaintiff does not aver that Ms. James had any knowledge of Plaintiff's purportedly protected statement to Mr. Greene or had any role in purportedly retaliatory decisions regarding Plaintiff's employment). To be clear, there are no other references to Ms. James. While Plaintiff liberally uses the word "Defendants" at various times in the Amended Complaint, such blanket, non-specific assertions do not meet muster. Merely mentioning Ms. James and implying that she was in some unknown way involved in other acts alleged is fundamentally inconsistent with the prevailing pleading standard. In short, Plaintiff fails to aver the individual participation by Ms. James that is necessary to support even an inference of liability on any Count (i.e., fails to raise the right to relief above the speculative level). Accordingly, all claims against Ms. James will be dismissed with prejudice.[10] Fed. R. Civ. P. 8(a)(2); Iqbal, 129 S. Ct. at 1950; Phillips, 515 F.3d at 232; Fowler, 578 F.3d at 210-211.

### B. Defendant Zappile

The Amended Complaint is also grossly inadequate concerning Defendant Zappile. Plaintiff makes only three factual allegations concerning Mr. Zappile's actions. In Paragraph 8, Plaintiff identifies Mr. Zappile as PHA's Chief of Police and Public Safety Director. In Paragraph 32, Plaintiff alleges that Mr. Zappile was her supervisor when she was assigned to be a Special Investigator. Finally, in Paragraph 34, Plaintiff alleges that Mr. Zappile "refused to

---

[10] Plaintiff had the opportunity to supplement the original Complaint with additional allegations as to Ms. James and did not do so.

speak" to her and "cautioned" other employees not to talk to her or trust her.[11]  The last averment is not complemented by any other relevant allegation (i.e., Plaintiff does not aver that she complained to Mr. Zappile about Mr. Greene, that Mr. Zappile knew about Plaintiff's conversation with Mr. Greene, or that Mr. Zappile played any role in the decision to transfer Plaintiff out of her role as EEO Officer into the position of Special Investigator).  As mentioned supra, while Plaintiff liberally uses the word "Defendants" at various times in the Amended Complaint, such blanket, non-specific assertions do not meet muster.  Merely mentioning Mr. Zappile and implying that he was in some unknown way involved in other acts alleged is fundamentally inconsistent with the prevailing pleading standards.  In short, Plaintiff fails to aver the individual participation by Mr. Zappile that is necessary to support even an inference of liability on any Count (i.e., fails to raise the right to relief above the speculative level).  Accordingly, all claims against Mr. Zappile will be dismissed with prejudice.[12]  Fed. R. Civ. P. 8(a)(2); Iqbal, 129 S. Ct. at 1950; Phillips, 515 F.3d at 232; Fowler, 578 F.3d at 210-211.

    **C.**    **Claims Against Remaining Defendants**

        **1. Count One - First Amendment Retaliation**

To state a First Amendment retaliation claim, Plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action.  Hill v. Borough of Kutztown,

---

[11] There is one other indirect reference to Mr. Zappile.  In Paragraph 33 of the Amended Complaint, Plaintiff alleges that she had a discussion with Mr. Pasour about Mr. Zappile.  This is not an allegation of something in which Mr. Zappile was purportedly involved.

[12] Plaintiff had the opportunity to supplement the original Complaint with additional allegations as to Mr. Zappile and did not do so.

455 F.3d 225, 241 (3d Cir. 2006); Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). A public employee's statement is protected by the First Amendment when: (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as result of the statement he made. Gorum v. Sessoms, 561 F.3d 179, 185 (3d Cir. 2009) (citing Borough of Kutztown, 455 F.3d at 241 and quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

In determining whether an employee spoke as a citizen, I look to whether a person spoke pursuant to his or her official duties. See Garcetti, 547 U.S. at 421 (holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes and the Constitution does not insulate their communications from employer discipline"); Gorum, 561 F.3d at 186 (concluding employee was not engaged in "protected citizen speech" because his responsibilities included the subject of his speech and his speech/actions were "made as a public employee engaging in his official duties"). See also, e.g., Davis v. Kinney, 518 F.3d 304, 313 (5th Cir. 2008) (stating that "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection," and noting that Circuits are consistent in holding that when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties/assignments, that speech is undertaken in the course of performing his job).

"Restricting speech that owes its existence to a public employee's professional responsibilities," the Garcetti Court aptly reasoned, "does not infringe any liberties the employee might have enjoyed as a private citizen. Rather, it simply reflects the exercise of employer

control over what the employer itself has... created." 547 U.S. at 421.  Put another way, the First Amendment does not shield the consequences of "expressions employees make pursuant to their professional duties." Id. at 426.[13]  The Third Circuit has recently reaffirmed these principles.  See Cindrich v. Fisher, Nos. 06-2615, 07-2969, 2009 WL 1950073, *5-6 (3d Cir. July 8, 2009) (holding speech "in the performance of [the employee's] case assignments, involv[ing] issues pertaining to those cases, and [ ] based on special knowledge and experience [the employee] acquired through her job" was "speech made pursuant to [the employee's] official duties").

I conclude that Plaintiff fails, on the face of the Amended Complaint, to allege that she engaged in speech by a private citizen such that is was protected by the First Amendment.  The allegations in the Amended Complaint are very limited.  The only "speeches" described therein are (1) a brief conversation with Mr. Greene – in which Mr. Greene asked Plaintiff what Plaintiff she was working on and Plaintiff responded that she had received three harassment complaints about Mr. Greene in her capacity as EEO Officer, and (2) a statement to Mr. Pasour that Plaintiff was uncomfortable working with Mr. Zappile.  I concur with Defendants that these conversations are precisely the kind of job-related speech that Garcetti and its progeny have held to be outside the realm of First Amendment protection.  When the "speeches" at issue occurred, Plaintiff was "on the job;" the brief conversations were substantially linked with Plaintiff's employment; and Plaintiff "spoke" pursuant to her official duties and in the scope of her employment (as the EEO Officer and Special Investigator).  Specific to the conversation with Mr. Greene, Plaintiff's job responsibilities as EEO Officer

---

[13] This result is consistent with the U.S. Supreme Court's prior emphasis on affording government employers sufficient discretion to manage their operations.  Garcetti, 547 U.S. at 421.

clearly included the subject matter of her "speech," and Plaintiff's "speech" was made to a superior in charge of her official duties, not to any private citizen or in any public context.[14] The statement to Mr. Pasour about Mr. Zappile clearly concerned the logistics of Plaintiff's employment assignment and her preferred (or non-preferred, as it were) supervisor.

Plaintiff's arguments to the contrary belie context and are simply inconsistent with the limited facts as alleged.  Neither of the fleeting conversations rises to the level of protected "speech."  Accordingly, because the "speech" at issue falls outside the scope of First Amendment protection, I will dismiss Count One as to Defendants Pasour and Greene.[15]

### 2.  Count Two - Section 1983 Claim

Because Section 1983 merely provides a remedy for a deprivation of rights established elsewhere in the Constitution or federal law, to proceed with such a claim Plaintiff must allege "a deprivation of a constitutional or federal right and that the Defendants acted under the color of state law."  Aubrecht v. Pa. State Police, 389 Fed. Appx. 189, 193 (3d Cir. 2010).  Because Plaintiff has failed to adequately plead a First Amendment violation and has abandoned any potential Fourteenth Amendment claim, no alleged violation of a constitutional or federal right remains.  Plaintiff therefore cannot maintain a Section 1983 claim.

*     *     *

The federal civil rights claims raised in Counts One and Two of the Amended Complaint were the bases for the subject matter jurisdiction of this Court.  28 U.S.C. § 1331.

---

[14] Indeed, Plaintiff specifically highlights the fact that her job responsibilities included investigating employee complaints.  Am. Compl. ¶ 14.

[15] In response to the Motions to Dismiss, Plaintiff stated that she was not pursuing a Fourteenth Amendment Due Process claim.

Because I will dismiss those Counts, I decline to exercise supplemental jurisdiction over the purely state law claim set forth in Count Three (Pennsylvania Whistleblower Act, 43 P.S. § 1421, et seq.).  28 U.S.C. § 1367(c)(3).

**IV.    Conclusion**

My sole responsibility at this stage of the case is to judge the sufficiency of the Amended Complaint in light of pleading standards set forth by the United States Supreme Court. After doing so, I conclude that Plaintiff has failed to adequately state a claim as to Counts One and Two.[16]  I will decline to exercise supplemental jurisdiction over Count Three.  An appropriate Order follows.

---

[16] Plaintiff has already had one opportunity to amend her complaint in response to motion practice.  I conclude that allowing further amendment would be futile and unfair to Defendants. Accordingly, I will dismiss Counts One and Two with prejudice.